We'll call the next case, which is United States v. Lone Wolf. Good morning. May it please the Court, my name is Stephen Babcock from the Federal Defenders of Montana. I represent the appellant defendant in this matter, Bryce Lone Wolf v. Youth. Your Honors, this case is very straightforward. It's about a district court keeping a promise, a promise to incarcerate a youth no matter what the nature and the circumstances are of a petition for violation. As the Court can see from the experts is that Bryce Lone Wolf was sentenced or at the original dispositional hearing received a 49-month term of probation for a crime of aggravated sexual abuse. That was underneath the Juvenile Delinquency Act. He was 15 years of age when the crime was committed. 16 years of age at the time of the original disposition. At the time of the original disposition when the probationary sentence was imposed, the Court unequivocally stated to the youth that if he came back he was going to face juvenile detention. As taking a look at the exact language of the dispositional hearing, the Court when talking with the youth's father, Professor Lone Wolf, told him if he comes back here because he violated the rules and a petition is filed, I will put him in juvenile lockup. When talking with the youth, he asked them, do you know what will happen if you come back here? The youth indicated juvenile detention. The Court responded, juvenile prison. Well, unfortunately Bryce did come back in front of the Court. Originally he did well for a period of months and then there was a letter of noncompliance filed by the probation officer in this matter. This letter of noncompliance did not suggest criminal activity but he was not following the terms of his probation. He had missed scheduled urinalysis testing and he had missed scheduled sex offender classes on about four or five occasions. He was reprimanded by his probation officer. He talked with our office and then he progressed and he did very well for a period of months. Unfortunately he came back to the Court in March of this year in 2006 on an official petition and it was the same violations. They were not criminal in nature. What they suggested is once again he had missed a couple of urinalysis testing and he had missed a few scheduled sex offender treatment classes. The Court unequivocally told him that when he came back, I told you what was going to happen to you if you came back. What's the violation you're arguing? What's the problem? What I'm arguing, Your Honor, is that the Court did not take a look at any statutory factors but just once again just told the youth that if he came back, no matter what the violation was, he was going to receive juvenile lockup. And in my opinion, Your Honor, Under what authority did he revoke and impose a sentence? And that's the problem, Your Honor, because he used the Sentencing and Reform Act. He did not use the Juvenile Delinquency Act and it's clear in the United States v. Sealed Appellant, which is a Fifth Circuit case, which has now more or less been codified. Assuming that were the case, what would be the harm in any event? The harm in that is what would have been different if the district court had properly invoked the FJDA? If he would have used the Juvenile Delinquency Act compared to the Sentencing and Reform Act, the principles in the two acts are completely different. With the Juvenile Delinquency Act, it's quite obvious that we treat our youth more lenient and we believe as though that the most important part of that is rehabilitation in the least restrictive environment. The on the revocation, counsel brought up many letters of recommendation that were brought to the court's attention. These were letters of recommendation that came not from his grandma or his mother or somebody like that that has undying love for the youth. It was a high school principal, a junior high principal, a drug and alcohol counselor, a librarian that all had the same thing. He was doing well in school. He could come back and they all wanted him to come back to school. Your argument, just so I understand, because you started off on keeping the promise and all of that, if your argument is that the court operated under the wrong legal authority and standard, that's one thing. But if you're arguing that no matter what he did, he should have been acting less as keeping a promise, are you arguing that it's even if there were I'm trying to get at whether you're saying even if we were to say that the judge could properly have acted under the Sentencing Reform Act, he didn't do the right things, or are you borrowing from the Juvenile Act and saying that he didn't do the right things? Well, I believe that he certainly admitted that he violated the terms of probation, but if I'm understanding you correctly, Your Honor, is that he did not take a look at the language of the Juvenile Delinquency Act, that was not even mentioned, and did not discuss the least rehabilitative and I guess he did not discuss rehabilitation in the least restrictive environment which that requires. Counsel, if I could follow up on Judge Fisher's questions. The district court did use the phrase pursuant, I'm quoting, pursuant to Sentencing Reform Act of 1984 of resentencing. He previously used the same language at the dispositional hearing and he resentenced the juvenile in this case to a term of detention until his 21st birthday. In light of the ambiguity that exists here, have you shown error that is plain under the end quote plain error rule and if so, how? I believe that it's plain error because it certainly substantially affected the use of rights. As a juvenile and then coming back in front of the court as a juvenile once again on a revocation, the court did not take a look at the basic principles of the Juvenile Delinquency Act, just more or less said I told you if you come back here, you're getting juvenile detention and that's what he got. Following up on that, doesn't your reading of Section 5037C require this court to find that the section means one thing for ordinary dispositions and an entirely different reading for dispositions following revocation of probation despite the fact that the words of the statute themselves don't change? Well, I believe, Your Honor, what 5037 states is though that it is supposed to remain within the Juvenile Delinquency Act if they do violate the terms of their probation. And additionally, it sets out the maximum terms of incarceration that can be given upon revocation. And the court exceeded that and gave him a 38-month term of incarceration in this case when clearly by statute any plain reading suggests that the maximum in this case could have been 36 months. So not only did the court use the wrong sentencing act, it sentenced him above and beyond the maximum that was allowable in this case. Pursuant to your construction, what was the maximum allowable? Thirty-six months, Your Honor. He sentenced him to 38, albeit it's only two months, but it is a substantial right for you to have an individual that is 17 years of age at this time and has been removed from his community. He's sent to a different state, away from his father. He has not had a chance to do, as the professional letters said, go back to school and graduate. It's realistically a travesty for this young man. I'm not saying that he does not deserve to be reprimanded, but the Juvenile Delinquency Act certainly states least restrictive environment. All the professionals said is though that he should come back to school. He was not afforded that opportunity. How much longer does he have in his sentence? He has right now, Your Honor, he is 18 years of age at this time, so effectively he has close to three years. The court imprisoned him until he turned 21. If I could reserve the rest. You may. Thank you. May it please the Court, once again, I'm Marcia Hurd from the District of Montana. I handled this case below at the trial phase on the revocation and, again, handled the brief. I guess I would agree, in one respect, with the defense in this case that this is a very straightforward case. This is a young man who was given a substantial break and placed on probation for a very serious sex offense, was given a second Counsel, isn't there a statutory problem here? Isn't it clear that he had to be sentenced under the Federal Juvenile Delinquency Act and wasn't? Well, I don't think it's quite that clear. I appear in front of this judge all the time, as does Mr. Babcock, and it is his standard practice to use that language. And I think the court properly pointed out that at the very first dispositional hearing Counsel, counsel. That may be the judge's standard practice. That doesn't make it right. Okay, so That's correct. My question is, is it not clear that a juvenile has to be sentenced under the Federal Juvenile Delinquency Act, not the sentence for Absolutely. Okay, so Absolutely. And the standards are different, are they not? They are. The Federal Juvenile Delinquency Act is, as pointed out, much more treatment oriented, much more least restrictive alternative oriented, and those kinds of things. But I think in this case that the judge did all of those things, even if he erroneously said pursuant to the Sentencing Reform Act, which is exactly what he said when he placed this young man on probation in the first place. Ms. Hurd He looked at the fact that Ms. Hurd, he did more than that, did he not? Not only did he sentence, and I'm quoting, pursuant to the Sentencing Reform Act of 1984, but he also said he was sentencing, and I policy statements. So by my reading, he's Correct. Three different references to adult incarceration statutes, rather than the juvenile statute. Isn't that correct? That's absolutely correct, Your Honor. Isn't that plain error? He did say those things. Isn't that plain error? Well, I think it only becomes plain error if it, in some fashion, made a difference to the sentence that the judge imposed. And I think in this case, the judge looked at the treatment-oriented section of the Juvenile Delinquency Act, looked at what Bryce had done. I realize that we have this feed time difference, and that makes it a little awkward, and we're sorry for you and for us. But the reality is, it seems like you're arguing that we are free to ignore what the judge says. Basically, watch what I do, not what I say. And I don't think that's the standard, is it? No, that isn't the standard, Your Honor. If the judge says one thing, not just once, but three times, that applies to the adult standard, isn't this case governed by that? Isn't that plain error? Well, I think you have to look at whether he really applied those adult standards and not just said the usual spiel that's said in sentencing. And I think in this case, he You're going back, though, to the same point. Don't look at what the judge says. Look at what the judge does. And the fact is, even in an adult setting, the judge has some discretion, at least post-certain cases. But the reality is, he mentioned three different adult standards here. And you can read it, in terms of what he did, different ways. But he clearly made those references, and I think he's bound by them, is he not? Yes, he is. I mean, those are certainly the things he said, that he looked at the original guideline range, and he looked at the Chapter 7 policy statements, and then made a decision to sentence this young man. So I think the language that was used was inappropriate. Does that mean he wasn't? Go ahead. Can I ask you to direct your attention, then? I think we understand your point about what he may or may not have done. But just assuming that we have a problem with terminology, in terms of the authority and vote, I'd like to get your view on the sentencing limitations, assuming we are properly competing under Section 5037. And 5037 is not as artfully drafted as it could be, probably to say the least. Okay. Now, let me focus you on the question. 5037B has at the end of it, the provisos, the provision that talks about revoking a term of probation and ordering a term of official detention. And it says that the term of official detention authorized upon revocation of probation shall not exceed the terms authorized in Section 5037C, 2A, and B. Now, by its terms, and I'm using the term now differently, by the language of that incorporated or cross-referenced section, it starts out saying 2 is the case of a juvenile who is between 18 and 21 years old. But the terms, the terms that seem to be referenced are the terms in subsections A and B. So if what the 5037B is attempting to do is translate or correct that the maximum would be the three years, because Lone Wolf would not fit within subpart A. And therefore, in any other case, he would be sentenced to the lesser of three years. Well, the problem with reading it that way is that you have to first look at subsection 2, which says a juvenile who is between 18 and 21, which he is not. No, that's my point. Right. They're not incorporating that. What they are simply using, I posit what they are saying, that the terms that can be imposed are the terms which have been set forth in those two subsections, whether the person is under 18 or over 18. Isn't that a fair assumption? Well, if we're looking at just the terms, right, if you're looking at just the terms under subsection capital A and subsection capital B, it appears to me that Bryce would fall under subsection A, because if he had been convicted as an adult, it would have been a class A, B, or C felony. So it would be beyond the lesser of five years or the maximum guideline range, which I think was 108 to 135 months. All right. So if accepting the reading I'm proffering, the government would say then he can fit within subsection A, and therefore the maximum term would be five years. Yes. If we read it that way, then I believe the judge is correct, although it's an interesting twist, because he could sentence him a lot longer than he could have in the original official detention, which was to the age of 21, and I'm not sure that that's what Congress intended either. And it may very well be just a scrivener's error, which the statute should have said was that the term of official detention authorized upon revocation of probation shall not exceed the terms authorized in sections 5037C1 and C2, because then you cover kids under 18 and kids between 18 and 21. Okay. Well, I appreciate that. I understand there are several readings here, and you helped me identify one flaw in the approach that I'm proposing. Any other questions from the panel? No. Okay. If not, I will leave it. Thank you. Thank you. What we do know is in 5037, and if this case, as the government concedes, should stay within the Juvenile Delinquency Act, what is to take a look at is the Chapter 7 guidelines. The Chapter 7 guidelines in this case come because of the nature of the violations were not criminal in nature, three to nine months, because he did not commit another crime. They're more or less, as the Chapter 7 says, breaches of trust. So it's three to nine months the court brought him back, just passingly referenced the three to nine months and imposed a 38-month term of incarceration. I believe that it was excessive. It was unreasonable. It was not warranted given the language of the Juvenile Delinquency Act. It should be remanded, and the court should be instructed to use the correct act and to give implicit reasons why rehabilitation would not be something that would be adequate in this case. But what is the sentence that you're looking for? I would be looking for something that is guided by the Chapter 3 guidelines, somewhere within the three to nine range, and I believe, what's that? Three to nine months. Three to nine months, and I think the court should act. He's served that, hasn't he? Yes, he has. I think he should be having credit for time served, and he should be released. He should be returned back to his family. I understand, and you're getting that to your reading based on the language of 5037B or some other. Are you going on the general proposition that they haven't talked about under 18-year-olds? That's correct, Your Honor. I think as though that they specifically state that it's whether or not it's 18 to 21 or any other case. Certainly he's any other case because he's 17, and by my reading of it, which is a plain reading of it, that the maximum would be 36 months. All right. But you would like to bring him under the maximum of the guideline range, under the subsection little 2? I believe that that would be a reasonable sentence, and the Chapter 7 guidelines were not looked at adequately in this case. All right. Thank you, Your Honors.  All right, the case argued will be submitted.
judges: Goodwin, Fisher, Smith